UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JSH'NICE CAIN                                                                       PLAINTIFF

V.                                                       CIVIL ACTION NO. 3:24-CV-244-KHJ-MTP

JACKSON PUBLIC SCHOOL                                                          DEFENDANT
DISTRICT

ORDER

Before the Court is Defendant Jackson Public School District's ("the District") [44] Motion for Summary Judgment. For the reasons stated below, the Court grants the motion in part and denies the motion in part.

I.     Background

Plaintiff Jsh'Nice Cain ("Cain") was an employee at the District from August 2016 until January 2023. Compl. [1] ¶¶ 7–9. From December 2021 to April 2022, Cain took approved leave under the Family and Medical Leave Act ("FMLA") to have surgery on her foot. Def.'s Mem. Supp. Mot. [45] at 2; *see also* [44-8] at 1–9. In December 2022, Cain required another surgery on her foot, so she submitted a request for 12 more weeks of leave under the FMLA. [44-9] at 1–5. She had the surgery over Christmas break while her FMLA request was still pending. [44-7] at 9–12; [44-10] at 4.

In January 2023, Cain provided the District with a note signed by her doctor "indicating that she could return to work with restrictions." [1] ¶ 27; [44-12] at 2–3. But that note was allegedly made in error, so Cain told the District she "had to wait

to talk to the doctor" before she could provide clarification on when she could return. [44-11] at 12.

The District denied Cain's FMLA request because she had not accumulated 1,250 hours of work in the last year. [44-9] at 8–9. While Cain claims she was eligible for leave under the FMLA, *see* [1] ¶¶ 32–33, the District told her the "unexcused" absences from work constituted job abandonment, and she faced potential termination. [44-11] at 8, 15.

The District instructed Cain to return to work immediately and said it would accommodate her medical limitations even though Cain had explained that the doctor's note authorizing her return was erroneous. *Id.* at 7, 12. Cain returned to work for approximately a day and a half. *See* Pl.'s Mem. Opp'n [50] at 3; [49-2] at 5. Soon after, her doctor issued new medical paperwork, correcting the prior paperwork and clarifying that she should be completely off work for 12 weeks post-op. [44-12] at 4; [49-1] at 35. Cain later provided this information to the District. [44-11] at 15.

After receiving this updated doctor's note, the District informed Cain that "[b]ecause [she did] not qualify for FMLA, [did] not have any remaining leave, and [her] doctor has stated that [she] cannot return to work for 12 weeks post-op, [her] absences will be unexcused and deemed as job abandonment." [44-11] at 15. Later that month, the District terminated her employment for abandonment. [44-4].

Cain sued the District on May 1, 2024, alleging discrimination, retaliation, and failure-to-accommodate under the Americans with Disabilities Act ("ADA") and

interference and retaliation under the FMLA. [1] ¶¶ 53–91.[1] The District now moves for summary judgment on all claims. [44] at 1.

II.   Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, while a dispute about that fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (citation modified). And a movant is "entitled to a judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022) (citation modified).

The Court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in [her] favor." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). The Court "may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified). "The sole question is whether a reasonable jury drawing all inferences in favor of the

---

[1] Cain also brings claims under the Rehabilitation Act. *See* [1] ¶¶ 53–78. Because the elements necessary to state a case of discrimination under the Rehabilitation Act are "operationally identical" to those under the ADA, the Court proceeds under the ADA. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 676 n.8 (5th Cir. 2004).

nonmoving party could arrive at a verdict in that party's favor." *Id.* (citation modified).

III. Analysis

   A. ADA/Rehabilitation Act Claims

Cain's ADA claims do not survive summary judgment.

    1. Discrimination

The Court grants the District's [44] Motion regarding Cain's discrimination claim under the ADA. *See* [1] ¶¶ 53–62.

"In a discriminatory-termination action under the ADA, [Cain] may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (citation modified). Under *McDonnell Douglas*, to establish a prima facie case of discrimination under the ADA, Cain must prove: "(1) that [she] has a disability; (2) that [she] was qualified for the job; and (3) that [she] was subject to an adverse employment decision on account of [her] disability." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020) (citation modified).

To establish the second element, Cain must establish that she was qualified to perform the essential duties of her job, despite her disability. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir. 1993); *see also* 42 U.S.C. § 1211(8). And if necessary, Cain also bears the burden of suggesting reasonable accommodations to the District. *See Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165–

4

66 (5th Cir. 1996). But the District's duty to accommodate does not require it to relieve Cain of her role. Rather, a reasonable accommodation would merely enable Cain to perform the role's essential functions. *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014) (explaining that "the ADA does not require an employer to relieve an employee of any essential functions of [her] . . . job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so" (cleaned up)).

The United States Supreme Court has explained that "a plaintiff's sworn assertion . . . that she is . . . 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). The Fifth Circuit has reinforced this, emphasizing that an employee "cannot simply ignore the apparent contradiction that arises out of the earlier . . . total disability claim, but must proffer a sufficient explanation." *Bell v. Hercules Liftboat Co., L.L.C.*, 524 F. App'x 64, 68 (5th Cir. 2013) (citation modified). Put another way, while an employee's boilerplate representation of

> total disability . . . may be a legal conclusion that can, through an adequate explanation, be reconciled with a subsequent ADA suit, an employee's specific factual statements that she was unable to perform her essential job duties at the time of the adverse employment action entitle the employer to summary judgment, at least absent a particularized showing that reasonable accommodations were possible.

*Id.* (citation modified).

Cain acknowledges she could not return to work. *See* [1] ¶¶ 28, 36, 38–40. In her [49-1] Deposition, Cain testified she was physically unable to return to work

5

from December 20, 2022, to March 14, 2023. *See* [49-1] at 34, 36. Cain also admitted she did not seek accommodations to be able to return to work before March 14, 2023. *See id.* at 36.[2] The only evidence of Cain pressing for a reasonable accommodation is when she asked for intermittent FMLA leave. *See id.*; [1] ¶¶ 66, 72.

While Cain has a right to a *reasonable* accommodation, she does not have a right to her *preferred* accommodation. *See Griffin v. UPS, Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (citation omitted). In receipt of her medical excuse, the District notified Cain that it would accommodate the listed restrictions and showed its willingness to engage in the process of accommodating Cain's medical needs. *See* [1] ¶ 35; [44-11] at 7; *see also Cutrera v. Bd. of Sup'rs of La. St. Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (noting an "employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee"). But Cain refused these accommodations, claimed they were based off an erroneous medical excuse, and insisted she had to remain off work entirely. [1] ¶¶ 27, 35–36, 42; [45] at 8. She submits she could only perform her job duties with her preferred accommodation—time off. Pl.'s Mem. Supp. Resp. [50] at 18–19. Equating her request for leave to a night's sleep, an afternoon of dialysis, or restrictions on lifting or standing, Cain argues, without citation, that 12 weeks of leave was a reasonable accommodation under the ADA in light of her medical inability to work. *Id.*

---

[2] The District highlights that Cain "knew she would be out for an amount of time past her days off," and this is why she requested additional leave under the FMLA. [52] at 6 (citing Cain Dep. [52-1] at 1–2).

6

The District need not accommodate Cain with indefinite amounts of leave. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). And, as Cain admits, the District previously allowed 16 additional absences, "over and above the 12-weeks of FMLA leave during the 2022 calendar year." [50] at 12 (citing [45] at 6). Further, an essential element of any job is the "ability to appear for work," and an employee who does not come to work "cannot perform any of [her] job functions, essential or otherwise." *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (citation modified). The District reinforced this in an email sent to Cain on January 13, 2023. [44-11] at 12. It read: "The essential functions of your job as a librarian require you to report to work in-person to provide services to scholars. Your continued[,] unexcused [absences] cause an undue hardship on the operations of the school." *Id.*

Because Cain was unable to work, she cannot satisfy an essential element of her ADA discrimination claim. Specifically, she cannot show that she was qualified for her job. *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017) (citation modified). Simply put, because Cain "has failed to demonstrate that there was any reasonable accommodation that would have enabled her to perform the essential functions of her job, her [discrimination] claim fails as a matter of law." *Phillips v. Jackson Pub. Sch. Dist.*, No. 3:22-CV-223, 2023 WL 7414484, at *9 (S.D. Miss. Nov. 9, 2023) (citation modified).

Because Cain was unable to perform her essential job duties and she failed to prove any reasonable accommodation was possible, she has failed to create a triable

7

issue as to whether she was qualified to perform her job, and her ADA discrimination claim fails.

   2. Retaliation

The Court grants the District's [44] Motion regarding Cain's retaliation claim under the ADA. *See* [1] ¶¶ 63–69.

"To establish a prima facie case of unlawful retaliation under the ADA, [Cain] must show that: (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020).

Cain cannot establish a retaliation claim because she could not perform her job's essential functions, as discussed above. *See supra* pp. 5–8; *Phillips*, 2023 WL 7414484, at *9 (explaining that "the Fifth Circuit has plainly held that a plaintiff must show [she] is qualified for the job in question to establish a prima facie retaliation claim under the ADA.") (citation modified).

Because Cain was unable to perform her essential job duties and failed to prove any reasonable accommodation was possible, she has failed to create a triable issue as to whether she was qualified to perform her job, and her ADA retaliation claim fails.

   3. Failure to Accommodate

The Court grants the District's [44] Motion regarding Cain's failure-to-accommodate claim under the ADA. [1] ¶¶ 70–78.

To establish failure-to-accommodate under the ADA, Cain must prove (1) she is a "qualified individual with a disability; (2) the disability and its consequential limitations were known by [the District]; and (3) [the District] failed to make reasonable accommodations for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (citation modified).

In December 2022, Cain submitted a 12-week request for "unpaid leave from work" because she "needed another surgery on her foot." [1] ¶¶ 22–23; [44-9]. She maintains this was a request for a reasonable accommodation under the ADA "*in addition* to requesting [leave under the] FMLA." [50] at 14 (emphasis added). The District denied the request because, according to their records, Cain "had not accumulated 1[,]250 hours of work in the last year." [1] ¶ 31; [44-9] at 8. Cain argues the District's records were false, she had worked 1,250 hours, and she "was eligible for FMLA [leave]." [1] ¶¶ 32–33. Accordingly, Cain claims she "requested a reasonable accommodation," the District "failed to engage [with her] in an interactive process," and the District "failed to accommodate [her]." *Id.* ¶¶ 71–74.

Not so. "[A] request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). FMLA leave is requested by an employee with a "serious health condition that makes the employee unable to perform the functions of the position," while a request for a reasonable accommodation under the ADA is made by an employee who can perform the essential functions of their position with or without that accommodation. *Id.* at 791 (citation modified). Put another way, "an employee

9

seeking FMLA leave is by nature arguing that [she] *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that [she] *can* perform the essential functions of the job." *Id.* at 791–92 (emphasis in original).

For two reasons, Cain's failure-to-accommodate claim fails. First, she could not perform the essential functions of her job, as discussed above. *See supra* pp. 5–8; *supra* n. 3; *see also Phillips*, 2023 WL 7414484, at *9 (granting summary judgment where plaintiff failed to identify reasonable accommodations that would allow her to perform essential job functions) (citation modified). And second, FMLA leave is not a reasonable accommodation under the ADA. *See Acker*, 853 F.3d at 791.

Because Cain was unable to perform her essential job duties and failed to prove any reasonable accommodation under the ADA was possible, she has failed to create a triable issue as to whether she was a qualified individual, and her ADA failure-to-accommodate claim fails.

    B. FMLA Claims

        1. Interference

Because genuine issues of material facts exist, Cain's FMLA interference claim survives. *See* [1] ¶¶ 79–85.

> To establish a prima facie interference case, [Cain] must show that (1) she was an eligible employee, (2) [the District] was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) [the District] denied her the benefits to which she was entitled under the FMLA.

*Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam).

"Per the FMLA," Cain says she "was entitled to protected leave to care for her serious health condition," and she "was entitled to return to her position after her medical leave." [1] ¶¶ 80–81. But "[t]he District did not allow her to take FMLA leave, and [it] did not return her to her position." *Id.* ¶ 82. So, according to Cain, the District unlawfully interfered with her rights under the FMLA. *Id.* ¶¶ 83–84.

    a. Eligibility

The District claims Cain was ineligible for FMLA leave beginning in December 2022 because she had exhausted her 12-week entitlement and had insufficient work hours. [45] at 5–7. The Court finds there are genuine issues of material fact on both of these issues that preclude summary judgment on Cain's FMLA interference claim.

    i. Exhaustion

First, the District claims that Cain was ineligible for additional FMLA leave beginning December 20, 2022, because she had exhausted her 12-week entitlement under the statute. *Id.* at 5–6. "The FMLA provides eligible employees with 12 workweeks of leave during any 12-month period for qualifying conditions." *Id.* at 5 (first citing 29 U.S.C. § 2612(a)(1)(D); and then citing 29 C.F.R. § 825.200(a)(4)). And "[o]nce an employee exhausts this 12-week entitlement, no further FMLA leave is available until the next 12-month period begins, as determined by the employer's chosen method for calculating the leave year." *Id.* (citing 29 C.F.R. § 825.200(b)). Based on its records, the District argues that because Cain exhausted her 12-week

entitlement to leave under the FMLA from December 29, 2021,to April 8, 2022, she "was ineligible for additional FMLA leave starting on December 20, 2022." [45] at 6.

In response, Cain argues "her annual 12-week allotment of FMLA [leave] 'refreshed' on December 29, 2022." [50] at 11. And the District was closed from December 22, 2022, to January 4, 2023. *Id*. Taking this into account, Cain missed two days—December 20–21, 2022—which were ineligible for FMLA leave, and she requested standard sick leave to account for those two days just in case her FMLA leave paperwork was incomplete. *Id*.; [44-11] at 1–3. Referring to the 16 additional absences the District voluntarily granted her throughout 2022, Cain argues that "the two additional [absences on] December 20th and 21st are . . . not likely to have been the cause of her termination." [50] at 12. Rather, according to her "termination email," "[i]t was her leave beginning January 13th that caused her termination." *Id*. at 11.

The District seemingly abandons its exhaustion argument in its [52] Reply.

Viewing the facts in the light most favorable to Cain, a genuine issue of material fact exists as whether Cain was ineligible for FMLA leave due to exhaustion of her 12-week entitlement. This claim survives.

    ii.  Insufficient Work Hours

The District also claims that Cain was ineligible for additional FMLA leave beginning December 20, 2022, because "she did not accrue the requisite 1[,]250 work hours in the 12 months preceding her requested leave." [45] at 6. "The FMLA requires employees to have worked 1[,]250 hours to be eligible for leave." *Id*. (first

12

citing 29 U.S.C. § 2611(2)(A)(ii); and then citing 29 C.F.R.§ 825.110(a)(2)). The District's records show that Cain worked only 880 hours in the 12 months before December 20, 2022—370 hours short of the statutorily required amount. *Id.*; *see also* Payroll and Leave Balances [44-13].

Bearing "the burden of showing that [Cain] has not worked the requisite hours," 29 C.F.R. § 825.110(c)(3), the District provides various documentation to support its stance that Cain was ineligible for FMLA beginning in December 2022, knowingly abandoned her job, and was later lawfully terminated. *See* [45] at 4. For example, the District provides several emails sent to Cain, urging her to provide proper FMLA paperwork, to remain in communication with her supervisors, and to submit doctor's excuses accounting for her unapproved absences. *See* [44-11]. The District provides Cain's second request, supporting documentation, and denial for the December 2022, 12-week FMLA leave period. *See* [44-9]. The District provides a letter from Jackson Public Schools to Cain's then-principal simply stating: "[U]nder the guidelines of the [FMLA], [Cain] is not eligible at this time for FMLA benefits. As of the date the leave starts, she has not accumulated enough hours to be eligible for leave." *Id.* at 8. The District provides the applicable [44-13] Payroll and Leave Balances, showing as of December 20, 2022—the date that Cain requested the FMLA leave to begin—Cain had only accumulated 880 work hours during the prior 12-month period, falling 370 hours short of the required 1,250. *See* [44-13]; [45] at 3;

13

[50] at 5.[3] And finally, the District provides Cain's [44-4] Termination Form, which simply states: "FMLA was denied. [Cain] does not have any remaining sick days." [44-4].

Cain rebuts this, insisting she worked over the requisite 1,250 hours preceding her December 2022 FMLA request. [50] at 5. She explains the records produced by the District do not include "work after hours at the school or work outside of school," and they "do not accurately track all hours worked." *Id.* at 13 (emphasis in original). To support this, she claims she "routinely spent her Sundays doing . . . lesson plans—often to [10:00 p.m.] at night—adding at least a sixth long day to her work week," she "routinely worked longer than eight hours per work day," she "spent substantial time in the summer preparing for the school year," and she "worked 1,250 hours or more within the preceding twelve months." *Id.* at 5–6. Her [49-1] Deposition supports this argument: Cain said she would work multiple days a month past contract hours, she worked evening events at the school such as parent-teacher night, math night, or ELA night, she participated in professional development some afternoons, she often came into work approximately 15 minutes before contract hours began, and she even came into work on the occasional Saturday. [49-1] at 14–21.[4]

---

[3] A workday for certified elementary teachers consists of 8 hours—from 7:30 a.m. to 3:30 p.m. [45] at 2 (citation modified).

[4] Cain admits she is unable to accurately quantify how many hours she had worked in the 12 months preceding the December 2022 FMLA leave request. [49-1] at 13.

Cain raises a genuine issue of material fact about whether she worked the requisite hours for FMLA eligibility. To be sure, "proof that [the District] kept track of the hours its teachers were present at the school building is not necessarily proof that [the District] kept track of all the hours its teachers actually worked." *Phillips*, 2023 WL 7414484, at *9. The FMLA regulations recognize that teachers often work off the clock in the manner Cain describes. *See* 29 C.F.R. § 825.110(c)(3) (explaining that teachers "often work outside the classroom or at their homes"). And, under the regulations, the District—not Cain—has the burden to show that Cain did not work the requisite hours. *Id.* But the District has not accounted for such time. For that reason, the claim survives. *See Phillips*, 2023 WL 7414484, at *9 (holding in a related context that a school district's failure to account for hours worked outside the school day raises a genuine issue of material fact).

Viewing the facts in the light most favorable to Cain, a genuine issue of material fact exists about whether Cain was ineligible for FMLA leave due to insufficient work hours. This claim survives.

    b.  Notice

The District then claims Cain failed to provide the requisite 30-day notice of her foreseeable FMLA leave, as required under the statute. *See* [45] at 6–7 (first citing 29 U.S.C. § 2612(e)(2)(B); and then citing 29 C.F.R.§ 825.302(a)). But the District's argument that Cain "points to no . . . evidence indicating that she informed anyone . . . that she was needing to take time off for a serious health condition or when she might need to take time off," is incorrect. [52] at 2.

15

In response, Cain maintains she "gave the required 'verbal notice' under [29 C.F.R. § 825.303(c)] on or about November 14, 2022, when she spoke to her assistant principal about her planned surgery." [50] at 9. In fact, she told both the principal and a woman working in the administrative office "about her need for a third surgery and FMLA [leave] more than a month in advance of taking it." *Id.* at 2 (citing [49-1] at 39).

The statute says "[a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).[5] "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Acker*, 853 F.3d at 789 (citation modified). Even so, the FMLA's "relaxed notice requirements" create a "low threshold" for the employee conduct sufficient to give notice. *See Villegas v. Albertsons, LLC*, 96 F. Supp. 3d 624, 630 (W.D. Tex. 2015) (citation modified).

In her [49-1] Deposition, Cain explained she informed both the assistant principal and the "office lady," on or about November 14, 2022, that she planned to

---

[5] Section 825.302 covers employee notice requirements for *foreseeable* FMLA leave. Section 825.303 covers employee notice requirements for *unforeseeable* FMLA leave. Because Cain was aware of her upcoming surgery and need for leave as early as October 2022, *see* Miss. Sports Med. R. [44-10], the Court analyzes the sufficiency of Cain's notice under Section 825.302.

have surgery and would need FMLA leave either before December began or at the beginning of Christmas break. [49-1] at 39–40; [50] at 9.[6]

Viewing the facts in the light most favorable to Cain, a genuine issue of material fact exists regarding whether Cain provided sufficient notice of her prospective FMLA leave. This claim survives.

    2. Retaliation

Cain's FMLA retaliation claim also survives. *See* [1] ¶¶ 86–91.

Courts analyze FMLA retaliation claims under the three-step *McDonnell Douglas* framework. *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021). Under this framework, Cain must first establish a prima facie case of retaliation by showing (1) that she was protected under the FMLA; (2) that she suffered an adverse employment action; and (3) that the adverse action was made because she invoked her rights under the FMLA. *Houston*, 17 F.4th at 582. This is not a demanding standard; Cain is only required to make "a very minimal showing" that she suffered retaliation. *See id.* (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)). If Cain establishes a prima facia case, the burden shifts to the District to provide a legitimate, non-discriminatory reason for terminating Cain's employment. *Id.* (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005)). If the District provides such a reason, the burden shifts back to

---

[6] Cain admits that the assistant principal was unaware Cain's surgery might require leave beyond Christmas break. [49-1] at 40.

Cain to show "by a preponderance of the evidence" that the District's reason is pretextual. *Id.*

The Court finds that genuine issues of material fact preclude summary judgment on Cain's FMLA retaliation claim. First, as analyzed above, the parties dispute whether Cain was protected under the FMLA when she requested leave. *See supra* Section B.1.a. (discussing facts in dispute about Cain's FMLA eligibility). Second, a genuine dispute of material fact remains as to whether job abandonment was the true reason for Cain's termination or merely a pretext. *See Byrd v. City of Houston*, No. H-18-778, 2019 WL 355746, at *11 (S.D. Tex. Jan. 29, 2019) ("In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.") (citation modified). The District says Cain abandoned her job when, despite not having FMLA approval, she missed work and failed to provide adequate doctor's excuses for her absences. [45] at 3-4; [44-4]. But the record shows that Cain regularly communicated with school personnel about her absences, attempted to provide doctor's notes, and made deliberate attempts to secure FMLA leave. [44-11] at 7-10.

When evaluating whether Cain's termination was causally related to the FMLA protection, "the [C]ourt shall consider the 'temporal proximity' between the FMLA leave and the termination." *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006) (citation modified). Therefore, the Court also takes note of the regularity of Cain's medical absences and the proximity between Cain

requesting more FMLA leave in December 2022 and the District terminating her in January 2023. Under these facts, there is a dispute about whether the District terminated Cain for job abandonment or for invoking her rights under the FMLA. Summary judgment is not warranted.

C. Attorney's Fees

The Court denies the District's request for attorney's fees. [45] at 9.

The ADA authorizes the Court, in its discretion, to award reasonable attorneys' fees to the "prevailing party." 42 U.S.C. § 12205.[7] But a prevailing *defendant* may not receive attorneys' fees "unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). And the Supreme Court instructs lower courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22. Instead, the Court must ask whether "the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Stover v. Hattiesburg Pub. Sch. Dist.,* 549 F.3d 985, 997–98 (5th Cir. 2008).

---

[7] The FMLA, meanwhile, *requires* the Court to award reasonable attorneys' fees to the prevailing *plaintiff*. 29 U.S.C. § 2617(a)(3) (emphasis added).

19

The parties litigated this case to summary judgment. And after careful consideration, the Court grants in part and denies in part the District's [44] Motion. Even though two of Cain's claims ultimately fail on summary judgment, the Court cannot say they were "frivolous, unreasonable, or groundless," warranting an award of attorneys' fees. *Christiansburg*, 434 U.S. at 422.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant Jackson Public School District's [44] Motion for Summary Judgment. The Court also declines to award attorney's fees.

In summary:

- The Court grants summary judgment on Cain's ADA discrimination, retaliation, and failure-to-accommodate claims.
- The Court denies summary judgment on Cain's FMLA interference and retaliation claims.
- The Court declines to award attorney's fees to the District.

SO ORDERED, this 22nd day of September, 2025.

s/ *Kristi H. Johnson*<br>UNITED STATES DISTRICT JUDGE