IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JSH'NICE CAIN**                                                                                **PLAINTIFF**

**v.**                                                     **CASE NO.3:24-cv-244-KHJ-MTP**

**JACKSON PUBLIC SCHOOL DISTRICT**                          **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
ADDITIONAL REMEDIES UNDER 29 U.S.C. § 2617(a) & FRCP 54(d)**

---

After an FMLA verdict on behalf of an employee, the Court should award certain additional statutory and equitable remedies. This motion addresses the following calculations required by the statute: (1) first we must understand the apparent evidentiary basis for the jury's calculation of backpay and benefits so that other issues can be addressed; (2) calculate an award of prejudgment interest at the rate of 15%, (3) calculate an award of liquidated damages, (4) calculate an award of five-years' frontpay at the rate found by the jury, (5) calculate the amount of reasonable attorney's fees, expert fees and other costs as defined by the FMLA, (6) calculate the post-judgment interest rate. Each matter will be addressed in turn.

    **1. Understanding the backpay and benefits award in light of the evidence**

In 29 U.S.C. § 2617(a)(1)(A)(i)(I), the FMLA authorizes the award of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." The jury was properly instructed that this means calculating what Cain has proven she would have received from JPS from the date of termination to the date of the verdict, and subtracting only such offsets for interim earnings which <u>JPS proved by a preponderance of the evidence</u> that she received from other employment during that time. *Jurgens v. EEOC*, 903 F.2d

386, 390–91 (5th Cir. 1990) (*quoting Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981)). The jury found that the amount of these losses in this case was $80,000. This amount is consistent with the evidence presented at trial as reflected in the following calculations, which we can assume the jury made. *See Taylor v. Union Pac. RR. Co.*, (Civ No. 18-1110-SDD-EWD) (M.D. La., August 9, 2022) (dividing award by the different time periods to calculate whether the award is consistent with the evidence).

The evidence showed that Cain was medically unable to work and therefore lost only benefits from January 23, 2023 until March 14, 2023 (12 week post-op from December 20, 2022), which is roughly two months. Trial Exhibit J2. The losses in benefits were in two parts: (1) lost health insurance contributions (e.g., employer contributions picked up in purchasing COBRA) and other "expensed benefits" that were approximately 35% x gross salary; J4[1] and (2) lost short term disability insurance payments equal to 50% of her gross salary. Thus her lost compensation until March 14th, was equal to 85% of her monthly gross salary for about two months, or [85% x 4676.88 x 2 = ] $7,950.70

From that point on, she accrued damages at a rate of backpay plus expensed benefits or [4676.88 x 135% =] $6,313.79 per month. She accrued the full amount for 2.5 months (to the end of June 2023), or [2.5 x 6313.79 =] $15,784.48 for a total of $23,735.17 from termination until January 23, 2023 until June 30, 2023. The remainder of the verdict, or [80000-23735.17 = ] $56,264.83, is attributable to the 28 months from July 2023 until the verdict.

During this time, Cain had some interim earnings from her job with Hazlehurst School District. However, JPS utterly failed to introduce any meaningful evidence of the amount of these interim earnings, and JPS had the burden of proof here. Thus, the jury would have been

---

[1] The 35% figure results from dividing "Total Expensed Employer Benefits" by "Total Gross Pay" on page four of the exhibit: 12455.77 / 35220.98 = 35%.

2

justified in finding that JPS failed to prove any interim earnings, and award a total of [28 x 6313.79 =] $176,786.12 for the period from July 2023 to the verdict. That fact that it awarded only about $56k for this period appears to reflect the jury graciously allowing JPS some credit for interim earnings in light of the Hazlehurst job, despite the absence of any proof as to the amount earned.[2] Specifically, the jury accounted for interim earnings to find Cain is accruing damages at a rate of [56264.83 / 28 = ] $2,009.46 per month from July 2023 to the present.

These factual findings are supported by the evidence, and should guide the Court's analysis of the other damages questions in the case, as described below.

   **2. Prejudgment interest**

In 29 U.S.C. § 2617(a)(1)(A)(ii), the FMLA specifically provides that pre-judgment interest shall be awarded in these cases. *Nero v. Indus. Molding Corp.*, 167 F. 3d 921, n.2 (5th Cir. 1999) (award at a rate of 10% in a similar financial environment). "Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole." *Thomas v. Tex. Dept. of Criminal Justice*, 297 F. 3d 361, 372, (5th Cir. 2002). "District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action." *Id.*

The Court has "broad discretion in setting prejudgment interest rates." *Gator Marine Serv., Etc. v. J. Ray McDermott & Co.*, 651 F.2d 1096, 1101 (5th Cir. 1981). The statute uses the vague language of "prevailing rates" without specifying what type of "rates" to compare to. In comparable cases "the Fifth Circuit has upheld awards at the [state] legal rate, at the federal legal rate, as well as, among other rates, higher rates roughly equal to the plaintiff's actual cost of borrowing," and has allowed a wide range of compounding, from no compounding to daily

---

[2] Apparently the jury estimated $4,304.33 in monthly pay and benefits from Hazlehurst, a not unreasonable assumption ($51,651.96 annually) and certainly not outside what the evidence - or lack of it - would justify given the burden of proof on JPS.

compounding. *Pillsbury v. Midland Enterp. Inc.*, 715 F. Supp. 738, 771 (E.D. La. 1989) (collecting cases). So although the award of prejudgment interest is basically *de rigueur*, the choice of rate is almost entirely up to this Court.

And because the purpose is to make this specific Plaintiff whole, the best method would be to look at the judgment creditor's "actual cost," either of loans she needed or of lost opportunities to invest and grow due to the income loss found by the jury. For middle-class employees like the Plaintiff, the time value of money related to the financial consequences of losing a job will usually be a combination of consumer credit card debt, plus lost opportunities to make voluntary investments in 401k's and similar retirement accounts that broadly track the stock market. And indeed, as the attached declaration shows, Ms. Cain has been impacted in precisely this way. [Exhibit 1] Thus, these benchmarks - credit card rates and stock-market growth - represent the time value of money for Ms. Cain specifically. The following rates should be considered in setting the amount of prejudgment interest:

- Cain and her husband carried credit card debt at an interest rate above that requested here, compounding monthly. Exhibit 1.
- An investment in the S&P 500 made at the end of January 2023 would have had a nominal total return (with dividends reinvested) of 76.61% (22.99% annualized) at the end of October 2025.[3]

In addition, the recent decision in *ABC Supply Co*, is illuminating. *ABC Supply Co., Inc. v. Shannon-Green Const. LLC*, (No. 3:23-cv-363-DMB-RP) (N.D. Miss. 2025) (Doc. #45 at 8.) In this diversity case, the Court calculated a 18% rate for prejudgment interest based on Mississippi law. Although the Court relied in part on some vague language in the contract

---

[3] This is calculated using a reputable online calculator based on data compiled by economist Robert Schiller. https://ofdollarsanddata.com/sp500-calculator/

4

providing "late payment" charges of 1.5% per month, it also held alternatively that 18% was reasonable regardless: "the Court alternatively concludes prejudgment interest at an annual rate of 18% is appropriate given the language in the credit application, and SGC's and P&M's default. *See Harvey*, 790 Fed. App'x at 593 ('the second sentence of § 75-17-7 gives trial courts discretion to set the prejudgment interest rate')."

In light of the above, Plaintiff suggests that a fair rate representing Cain's losses from the time value of money can be approximated by daily compound interest at a rate of 15% per year for the 2.8274 years from the date of termination to the verdict. The total amount of backpay and benefits damages including pre-judgment interest is therefore $122,247.72. [Exhibit 2][4]

### 3. Liquidated Damages

The FMLA provides that a court shall award liquidated damages equal to the damages due to lost compensation plus pre-judgment interest, with only limited exceptions possible. *See* 29 U.S.C. § 2617(a)(1)(A)(iii). As stated in the leading case on FMLA liquidated damages, this provision is identical with the same provisions under the FLSA. *Nero v. Indus. Molding Corp.*, 167 F. 3d 921, 928-929 (5th Cir. 1999).

"The duty of the court to award liquidated damages in an amount equal to the unpaid wages due under sections 206 and 207 of the FLSA are ministerial, not discretionary." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414-15 (5th Cir. 1990). The additional damages are meant to be compensatory, not punitive, in nature. *Mohammadi v. Nwabuisi*, 990 F.Supp.2d 723, 749 (W.D. Tex. 2014) (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)). There is a strong presumption in favor of imposing full liquidated damages under the Act. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999).

---

[4] For reference, the exhibit also includes interest calculations at 10% and 20% rates, to give the Court additional flexibility in determining the appropriate interest to award here.

There is only one exception under which the court may, at its discretion, decide to award lesser or no liquidated damages, under which Defendants bear a "'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, TX*, 324 F. 3d 813, 822-23 (5th Cir. 2003) (citation omitted).

This is a dual burden: the Defendants must prove that their actions were "***both*** in good faith ***and*** reasonable." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414-15 (5th Cir. 1990) (emphasis in original). "'Good faith' requires some duty to investigate potential liability under the FLSA." *Id.* (*citing Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).

"The 'good faith' requirement is a subjective standard where the employer must establish 'an honest intention to ascertain and follow the dictates of the FLSA.'" *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (*quoting Hultgren v. Cnty. of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990)). To prove that it acted in good faith, an employer must show that it "took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions." *Ind. Mich. Power Co.*, 381 F.3d at 584. Good faith means more than merely "not willfully" failing to comply, and even negligent conduct demonstrates a lack of good faith. *Id.* Moreover, an employer cannot hide behind the lack of complaints from all or some of its employees to demonstrate good faith because demonstrating good faith requires more than the absence of intent or knowledge. *See Barbeque Ventures*, 547 F.3d at 942 ("The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute.")).

If the employer can meet its substantial burden to show subjective good faith, it must then show that its reasons for believing there was no violation were objectively reasonable. *Ind. Mich. Power Co.*, 381 F.3d at 584; *Elliot Travel & Tours*, 942 F.2d at 967; *Barbeque Ventures*,

6

547 F.3d at 942. "Courts have held that a demonstration of objective reasonableness requires more than the absence of intent or misunderstanding; there must be 'objectively reasonable grounds for the employer to believe itself in compliance with the Act.'" *Tran v. Thai*, 2010 U.S. Dist. LEXIS 133130, at *19-20 (S.D. Tex. Dec. 16, 2010) (citing *Solis v. Min Fang Yang*, 2009 U.S. App. LEXIS 15344, at *7-8 (6th Cir. July 10, 2009) (noting that ignorance of the law, adherence to cultural practices, and language difficulties have been held to be insufficient bases to bar the recovery of liquidated damages). Finally, blind adherence to industry practice is also an insufficient basis to bar the recovery of liquidated damages. *Reich*, 121 F.3d at 71; *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 910 (3d Cir. 1991) (good faith cannot be established merely by conforming to industry standards).

If Defendant fails to prove itself under either test, the award of liquidated damages is mandatory. *Id.* In addition, "even if the district court determines that the employer's actions were in good faith and based on reasonable grounds," the court still has "discretion to award liquidated damages." *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 227 (5th Cir. 1991).

Here, Defendant has failed to prove either subjective good faith or an objectively reasonable basis for its actions. Its policy of only counting 8 hours in the "workday" regardless of the hours actually worked flies directly in the face of very clear FMLA regulations stating otherwise. Its failure to give an eligibility notice within 5 days without any good cause (as the jury found) is also inconsistent with any diminishment in liquidated damages. Its failure to do any investigation of the hours Cain worked in denying her leave reflects culpable negligence at the very least. There is nothing in the record to reflect any investigation into whether it was complying with the FMLA here. And the jury's conclusion - that JPS had animus and deliberately retaliated against Cain by offering pretextual reasons for termination that it knew

7

were untrue - is inconsistent with good faith. As in *Nero*, "in light of the discrepancy between the testimony of [JPS] personnel and the [documents] . . . the jury's conclusion regarding good faith is not clearly erroneous."

In sum, there is no basis to vary from the strong presumption in favor of liquidated damages here, thus requiring an award of liquidated damages equaling the backpay, benefits and interest amount of $122,247.72.

**4. Reasonable attorney's fee, expert fees and costs**

"The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). Attorney fee awards are calculated by first determining the "lodestar" rate for fees, and then by modifying that rate as necessary in light of the *Johnson* factors. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974)). The lodestar rate is "the prevailing hourly rate in the community for similar work." *Combs v. City of Huntington, TX*, 829 F. 3d 388, 392 (5th Cir. 2016).

**a. Reasonable attorney's fee**

**i. Inflation**

Before discussing historical facts and cases, it is important to note that the Fifth Circuit accounts for inflation in evaluating past awards. *See Puga v. RCX Solutions, Inc.*, 922 F. 3d 285, 298 & n.12 (5th Cir. 2019); *cf. Nkenglefac v. Garland*, 64 F. 4th 251, 254-55 (5th Cir. 2023) (in the EAJA context, applying inflation adjustment is the norm absent "unusual circumstances" that require otherwise). Thus, in evaluating a "reasonable" rate in the market based on historical caselaw or information, the Court should apply the inflation adjustment to those figures to assess

the current equivalent.

The question then is what measure of inflation is best to account for changes in the market rate of attorney billing specifically. Courts have used a variety of measures, and although some form of inflation index is the most widely used figure, there has not been unanimity on the precise way to use the inflation index.

As this Court recently held in *Strickland v. Wilkie*, this Court can use "the Legal Services Component of the Producer Price Index, which supports an adjusted rate." *Strickland v. Wilkie*, (3:18-cv-00750-HTW-LGI) (Doc. 105). This is the best approach because it uses the specific component of inflation that best matches the prices at issue - producer prices of attorney fees. *See, e.g.*, *Salazar v. D.C.*, 123 F. Supp. 2d 8 (D.D.C. 2000) (cited by *Perdue v. Kenny A. Ex rel. Winn*, 559 U.S. 542 (2010)).

It is Economics 101 that prices are uneven - one would not expect the prices of guns and butter to rise and fall in lockstep with each other. Prices change differently for different items as the specific demand and supply for that item rises and falls. Thus neither national nor regional inflation indices accurately reflect the changes in producer prices for legal services - the relevant measure of what a law firm must charge to recruit and keep legal talent and survive, and thus the relevant measure for our purposes here.

Fortunately, the government does have an index which tracks producer prices for legal services specifically. This index is called the Legal Services Component of the Producer Price Index (Series ID: PCU5411), and the relevant data is attached.[5] This Court should follow this Court's decision in *Strickland* in using PCU5411 to calculate legal inflation. As the D.C. Circuit,[6]

---

[5] The method for making inflation adjustments is to multiply the original dollar figure by 314.819 (the PCU5411 for the most recent date of 2025-09-01) then divide by the PCU5411 figure for the date on which the original award was made. [Original award x PCU5411 of today / PCU5411 of the original date = Inflation adjusted amount of the award]. Data is from FRED. https://fred.stlouisfed.org/series/PCU54115411

[6] The Fifth Circuit does not appear to have ruled on the use of this data one way or another, but that is likely because

has also held, the legal services components of inflation have "the distinct advantage of capturing the more relevant data because it is based on the legal services component of the Consumer Price Index rather than the general CPI." *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58 (D.C. Cir. 2015); *see also Interfaith Community Org. v. Honeywell Int'l*, 719 F.3d 281 (3rd Cir. 2013) (affirming use of the Legal Services Component to adjust price information for attorney fee rate calculations). For this reason, the historical information on rates is adjusted using this measure of inflation in the discussion below.

### ii. The lodestar rate here

The first step in determining the lodestar is to determine the "attorney's alleged customary billing rate." *Joiner v. City of Columbus* (1:14CV090-SA-DAS) (January 4, 2016). If it is within "the range of market rates" then typically it should be honored unless the Court articulates specific reasons that it will not do so in the particular case. *Id.*

As stated in the accompanying affidavits, the customary billing rates in this case are as follows:

- $495 per hour for Joel Dillard
- $325 per hour for attorney Kevin Hanlon
- $250 per hour for experienced paralegal Lisa Rigby
- $160 per hour for paralegal Al Green
- $150 per hour for secretary Yolanda Holmes

On September 1, 2022, Mr. Dillard was awarded a lodestar rate of $415 per hour by a federal administrative law judge in a disputed fee petition against the government in an employment discrimination case (about $511 adjusted for inflation). On May 29, 2025, this Court found $450

---

it does not appear to have been presented with this LSI-PPI data in the caselaw that the undersigned has been able to identify. Thus, this Court has discretion to consider and use LSI-PPI, which is the best measure of inflation in the relevant prices here.

was a reasonable attorney fee for the undersigned in an opposed fee petition in an EAJA case ($451 adjusted for inflation). *Strickland v. Wilkie*, (3:18-cv-00750-HTW-LGI) (Doc. 105). These recent awards were in line with the continually increasing progression of awards given to Mr. Dillard as he has gained experience.[7] The broader caselaw is also consistent with the lodestar rates requested here. The Court consults awards over the entire state of Mississippi for context in determining what is reasonable. *Pickett v. Miss. Bd. of Animal Health*, 2021 WL 4979009 (S.D. Miss. Oct. 26, 2021). The most recent fee award cases in federal court in Mississippi are directly in line with the request, as the following two examples show.

The first is *ABC Supply Co., Inc.*, *supra*. In that breach of contract default judgment - which did not, of course, require a jury trial or the sort of deep statutory and regulatory knowledge necessary in the present matter - the attorney affidavit attested that attorney Sterling Kidd (admitted in 2010) billed $495 per hour in 2024, attorney James Tulp (admitted in 2023) billed $335 in 2024, and paralegal Michael Mathews billed $310 per hour in 2024. *Id.* at Doc. 46-1. The Court analyzed the rates and, based on this affidavit alone as the sole evidence, concluded that these rates were reasonable and "'consistent with and within the range of rates of attorneys and staff of similar experience and reputation in the Jackson, Mississippi area.'" *Id.* at Doc. 47 (quoting the affidavit). Mr. Dillard's rate is the same as Mr. Kidd's, and Mr. Hanlon's rate is below that of Mr. Tulp, the comparable attorney in *ABC*.

Second, in *Anthony v. Welker*, (3:23-CV-132-KHJ-MTP) (S.D. Miss. Sept. 12, 2025), the Court awarded $160,884 in attorneys' fees for a four-day jury trial. The requested rates were

---

[7] *Brooks v. Illusions*, (5:16-cv-31-KS-MTP) (April 10, 2017) and (April 12, 2017) (in a sanctions opinion, approving rate of $260 (about $388 adjusted for inflation), when attorney was in his 9th year); *Perkins v. Quick Food Mart #3*, (3:18-cv-00189-CWR-LRA) (March 5, 2019) (in a simple default judgment, approving rate of $280 (about $395 adjusted for inflation), when the attorney was in his 11th year); *Dunigan v. MVSU*, 4:19-cv-00033-DMB-JMV, (Doc #: 188) (October 2020 petition disputed and litigated, resulting in a lodestar award of $318 per hour (about $426 adjusted for inflation) when the undersigned had 12 years experience); *Rose v. Town of Maben*, NO.1:22-CV-61-SA-DAS (July 24, 2024, Docket 161) (awarding $440 lodestar (about $472 adjusted for inflation)

11

$500 to lead attorney Jim Lees and $400 to second-chair attorney Brandon Flechas. The supporting affidavits stated that these rates were consistent with the legal market rates as attested by Rachel Piece Waide and Victor I. Fleitas. Mr. Fleitas specifically opined that he lectures and practices in the area of employment law and that $400 to $500 per hour rates are "in line with the prevailing market rate for attorneys representing plaintiffs in civil rights cases" and that this is based on his knowledge of the "rates charged by colleagues in civil rights cases in the Southern District of Mississippi." Based on this evidence, the Court awarded the requested rates over opposition from the defendants in that case.

      Nor are *ABC* and *Anthony* outliers, as they are in line with the historical rates awarded by this Court over the years. *Mass. Mut. Life Ins. Co. v. Williamson*, No. 4:15-CV-166-DMB-JMV, 2020 U.S. Dist. LEXIS 4318 (N.D. Miss. Jan. 10, 2020) (approving a $385 lodestar (inflation adjusted to $527 today) for a junior partner with twenty years of experience); *Mosley v. Nordquist*, No. 3:13-cv-161-LG-JCG, 2016 U.S. Dist. LEXIS 135829 (S.D. Miss. Sep. 30, 2016) ("Mr. Grabel's hourly rate of $375 is reasonable for a partner with seventeen years of experience" (inflation adjusted to $577 today)); *M.B. v. Rankin Cty. Sch. Dist.*, No. 3:13-CV-00241-CWR-FKB, 2016 U.S. Dist. LEXIS 34717 (S.D. Miss. Mar. 17, 2016) ($325 rate (inflation adjusted to $506 today) approved for lead attorney in civil rights case); *Perez v. Bruister*, No. 3:13cv1001-DPJ-FKB, 2015 U.S. Dist. LEXIS 131285 (S.D. Miss. Sep. 29, 2015) (noting that "the average partner rate for these [regional Mississippi] firms comes to $392 per hour" (inflation adjusted to $617 today)); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06CV433-HSO-RHW, 2014 U.S. Dist. LEXIS 22050 (S.D. Miss. Feb. 21, 2014) (approving $358 rate (inflation adjusted to $583 today) for an attorney with "nearly 15 years

experience").[8]

Likewise, the paralegals in this case - though not licensed attorneys - performed essential legal work as reflected in their billing records, which is therefore compensable at the qualified paralegal rate of approximately $250 per hour.[9] *ABC Supply Co., Inc., supra*. ($310 rate for experienced paralegal); *Mass. Mut. Life Ins. Co. v. Williamson*, (4:15-CV-166-DMB-JMV, 4:15-CV-184-DMB-JMV) (January 10, 2020) ($150 for paralegal, $188 adjusted for inflation); *Sales v. Bailey*, (2:12-CV-00056-SA-SAA) (April 22, 2015) ($125 for paralegal, $171 adjusted for inflation).

### iii. The *Johnson* factors.

No adjustment is required based on the *Johnson* factors.

### iv. The time reasonably spent.

The attorneys, paralegals and others in this case kept precise and detailed contemporaneous billing records which support the award sought. The exercise of billing judgment reflects sound billing practices. Over almost three years of litigation from EEOC charge to verdict, the Plaintiff has sought the most efficient path to resolution, taking only one half-day 30(b)(6) deposition and resolving discovery disputes without motions practice. The focus group work was short and limited to what was necessary for advocacy in the case. *See Anthony v. Welker*, (3:23-CV-132-KHJ-MTP) (S.D. Miss. Sept. 12, 2025) (discussing reasonable use of focus groups to prepare for trial). The attached declaration also details the exercise of billing judgment on the entries, reducing them by a substantial percentage in line with precedent

---

[8] This is not, of course, a truly comprehensive survey of all the caselaw, and there are doubtless cases awarding lower rates. However, it is reasonable to expect that, in the vast majority of such cases, the rate is lower for the simple reason that the requesting attorney did not seek a higher rate in the petition. *See e.g.*, *Fid. & Deposit Co. of Md. v. Greater S.E. Const., LLC*, (Civil Action No. 2:24-cv-86-KS-MTP) (S.D. Miss., April 16, 2025) (awarding the requested $310 but noting that up to $450 has been awarded in similar cases - without accounting for inflation). Such awards shed no meaningful light on the question of what rates the Court considers reasonable.

[9] Because paralegals are not attorneys, general CPI has been used here rather than LSI-PPI.

and the usual procedures in private practice.

The bottom line is that the award of fees requested is reasonable and consistent with precedent. Plaintiff therefore asks that attorney's fees be awarded in the amount of $145,884.

### b. "Reasonable expert witness fees and other costs"

The statutory language - which defines "other costs" as including "reasonable expert witness fees" - makes clear that the "costs" referred to as reimbursable in the statute are much broader than the limited definition of court costs or taxable costs used in other contexts. It includes the actual costs incurred in preparing and presenting the case. Here that includes the following, as described in the attached declaration.

- $405 filing fee in this court
- $50 for service of the summons and complaint
- $161.74 paid for medical records
- $964.00 paid for deposition transcripts
- $175.75 paid for a pre-briefing one-hour focus group
- $279.27 paid for a pre-trial five-hour focus group
- $100 witness appearance fee with served subpoenas
- $250 for service of process (estimated, invoices pending)

The total costs are therefore $2,385.76.

### 5. Frontpay

The FMLA authorizes "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S. Code § 2617(a)(1)(B). This includes frontpay where reinstatement is "infeasible." The leading cases in the Fifth Circuit are *Downey v. Strain*, 510 F. 3d 534, 544 (5th Cir. 2007) and *Giles v. GE*, 245 F. 3d 474, 489-90 (5th Cir. 2001).

"Reinstatement generally is preferable to an award of front pay, and we customarily require the district court to articulate its reasons for finding reinstatement infeasible and awarding front pay in lieu of reinstatement." *Giles*, 245 F. 3d at n.27.

Here, it is simply not feasible to reinstate Cain because of the unique yearly contract structure applicable to certified teachers in Mississippi. Under Miss. Code 37-9-57 and related laws, both Cain and JPS have made commitments for the 2025-2026 school year that they cannot lawfully break. *Cf. Byrd v. Greene Cnty. Sch. Dist.*, 633 So. 2d 1018, 1023 (Miss. 1994) (holding that the district cannot back out of contracts once they are signed unless the employee engages in personal misconduct justifying termination). Cain could have her teaching license suspended if she "abandons" Hazlehurst to accept a reinstatement offer. Miss. Code 37-9-59.

The rate for calculating frontpay is not difficult to determine here. As discussed above, the jury's verdict implicitly found that Cain continues to suffer damages in lost pay and benefits of $2,009.46 per month. This is therefore the rate for frontpay as well.

The harder question is the number of years to award as frontpay. "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." *Sellers v. Delgado Coll.*, 781 F.2d 503, 505 (5th Cir. 1986). "This court has identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship." *Downey*, *supra*.

Applying the factors here, (1) Richardson had worked for JPS since 2016 on the date she was fired in 2023. (2) She was a teacher who worked on a contract basis with an expectation of

15

annual renewal of that contract - a far more stable position than in the typical "at will" employment situation. (3) Teachers routinely work into their late 60s or later. (4) She is 53 years of age, and has been healthy and productive for her current employer since her last, successful surgery. (5) The evidence showed that there are frequent vacancies, including a current librarian opening, at JPS, such that it is unlikely any major restructuring would disrupt her employment. (6) Given the stability of the teaching profession, it is unlikely other factors would interfere.

In light of the unique stability of the teaching profession, it is certainly not a stretch to think that Cain would remain in her position for at least five more years. She therefore requests [$2,009 x 12 months x 5 years] $120,540 in front pay.

### 6. Postjudgment interest

Post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. 1961(a). The amount is calculated daily based on the published rate for 1-year Treasuries as calculated by the Federal Reserve and distributed by the Administrative Office of the U.S. Courts. It appears that the weekly average rate in effect from 11/14/25 to 11/20/25 was 3.67% according to the Federal Reserve's FRED database. Postjudgment interest on the full amount listed above should be included in the judgment from the date of the verdict on 11/20/2025 until the date of complete payment.

**CONCLUSION**

Plaintiff respectfully requests the following relief in the final judgment:

1. `$ 80,000.00` in backpay and benefits as awarded by the jury

2. `$ 42,247.72` (15%/yr, compounded daily) in prejudgment interest

3. `$122,247.72` in liquidated damages

4. `$145,884.00` in reasonable attorney's fee

5. `$  2,385.76` in other costs

6. `$120,540.00` (5yrs at ) frontpay

Total: `$513,305.20`

7. With postjudgment interest accruing at a rate of 3.67% per year.

Respectfully submitted on December 4, 2025.

*/s/ Joel Dillard*
Joel Dillard (MSB No. 104202)
JOEL F. DILLARD, P.A.
775 North Congress Street
Jackson, Mississippi 39202
(601) 509-1372, ext. 2
joel@joeldillard.com